**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,

    Plaintiff,

    v.                                                    Case No. 1:19cr103

Da'Quan Payne,                            Judge Michael R. Barrett

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant's Motion to Suppress Evidence filed on February 27, 2020. (Doc. 24). The Government filed a Response in Opposition on May 8, 2020. (Doc. 27). Defendant filed a Waiver of Hearing and Oral Argument on July 2, 2020. (Doc. 29).

**I.    BACKGROUND**

Defendant Da'Quan Payne has been charged with five counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); eight counts of Possession with Intent to Distribute in violation of 21 U.S.C. § 841 (a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), and 18 U.S.C. § 2; two counts of Possession of a Firearm in Furtherance of a Serious Drug Offense under 18 U.S.C. § 924(c)(1) and (2); and three Counts of Possession by a Prohibited Person 18 U.S.C. § 922(g)(1), 924(a)(2) and 2. *Id.*

In June of 2019, an investigation was launched looking into Payne for the distribution of heroin/fentanyl in the Greater Cincinnati area by Norwood Drug Task Force ("NDTF"), Ohio Bureau of Criminal Investigation ("BCI"), and the Cincinnati Police Department District 2 Violent Crimes Squad ("VCS"). (Doc. 27, PageID 95).

Throughout this investigation, law enforcement was assisted by a Confidential Source ("CS"). (Doc. 24-1, PageID 78). The CS conducted multiple controlled purchases of heroin/fentanyl from Payne throughout the investigation. *Id.* at PageID 78-86. The CS provided the law enforcement officers with a phone number used by Payne to distribute heroin/fentanyl, a description of the vehicles used by Payne, and information that Payne was using a storage unit to further his narcotic trafficking. *Id.* at PageID 78. Video and audio recording of each of the controlled purchases were used to monitor the transactions between the CS and Payne. *Id.* at PageID 80. Following each of the controlled purchases, the CS was searched for contraband and unauthorized funds with negative results. *Id.*

Law enforcement officers obtained a search warrant for a GPS tracking device, which they placed on Payne's vehicle. *Id.* at PageID 81. Payne was monitored on electronic and visual surveillance throughout the investigation and was seen coming and going from the Fairfield Self-Storage, where storage units were rented in his name. *Id.* at PageID 86. In his affidavit, which is attached to the warrant application, Detective Terrylee Rocky Siegel stated that based on his training and experience, it is common for drug traffickers "to store narcotics and proceeds from narcotics trafficking in storage units to avoid detection from law enforcement and rival drug dealers." *Id.*

On July 29, 2019, law enforcement officers obtained a search warrant for Payne's storage lockers at Fairfield Self-Storage: Units #310 C and #768 L. (Doc. 27, PageID 96). The search warrant was carried out the next day. *Id.* Payne argues that there was insufficient probable cause to support the warrant. (Doc. 24, PageID 71). Payne contends that observing him at the storage lockers does not support the existence of

2

probable cause. *Id.* Payne explains further that paragraph 23 of the warrant affidavit fails to mention storage unit #768 L. *Id.*

## II. ANALYSIS

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.

In deciding whether to issue a search warrant, the Fourth Amendment requires the issuing magistrate to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal alterations omitted). In other words, "[i]n applying the probable cause standard, the magistrate uses a practical standard, based on factual and practical considerations of everyday life, rather than a technical standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Lapsins*, 570 F.3d 758, 763-64 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n. 13, 103 S. Ct. 2317, 2334, 76 L. Ed. 2d 527 (1983)).

Additionally, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (internal citations omitted). The nexus "can be inferred from 'the type of crime being investigated,

3

the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *United States v. Elbe*, 774 F.3d 885, 889-90 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1573, 191 L. Ed. 2d 656 (2015) (quoting *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008)).

Payne argues that the failure to include both storage units in paragraph 23 of the warrant affidavit negates the probable cause to search storage unit #768 L. (Doc. 24, PageID 71). However, the failure to cite both storage units in that single paragraph merely amounts to a clerical error. In *United States v. Watson,* the Sixth Circuit explained that the failure to state the actual residence in a section of the warrant was the result of a clerical error and the purpose of the warrant was clear. 498 F.3d 429, 433 (6th Cir. 2007). The Sixth Circuit further explained that warrants are meant to be read in a "common sense fashion" and "not hypertechnically." *Id.* Here, both storage units are mentioned throughout the entirety of the warrant and the failure to include one of them in a single paragraph does not preclude the search from including storage unit #768 L, nor confuse the purpose of the warrant.

The Court now turns to the question of whether there was probable cause to issue the search warrant of both storage unit #310 C and #768 L.

For the existence of probable cause, an affidavit cannot include only conclusory statements. *Illinois v. Gates,* 462 U.S. at 240. Further, an informant's tip to the police obtains more validity when corroborated by independent police work. *Id.* at 243.

In *United States v. Garnett,* the Sixth Circuit stated that the detailed information provided by a reliable confidential informant which was corroborated by law enforcement

was sufficient for a search warrant for the defendant's storage unit. 1999 WL 196565, *3 (6th Cir. 1999). In addition, there was a warrant affidavit by a law enforcement officer stating he "is aware that criminals rent storage units to keep their contraband in as a means of keeping it physically separated from them, in an attempt to prevent law enforcement officers [from prosecuting] them on additional charges." *Id.*

In *United States v. Gregory,* "citizens with no criminal affiliation," including a reliable confidential source, told law enforcement officers that the defendant "had a local storage unit where he stores guns and bomb [-] making material." 311 F. App'x 848, 857 (6th Cir. 2009). The Sixth Circuit explained that based on that information, in addition to items found during a prior search warrant on the defendant's home, the law enforcement officers were justified in pursuing the caller's leads. *Id.* at 857-58. The officers also confirmed that the defendant did lease a storage unit, thereby corroborating the reliability of the tips. *Id.* at 858. The Sixth Circuit concluded that the officers had established probable cause for a search warrant. *Id.* at 858.

Here, the affidavit includes a detailed account of multiple controlled transactions between the CS and Payne, the belief stated by the CS that Payne was using a storage facility to facilitate his narcotic trafficking, and independent corroboration by police through electronic and visual tracking of Payne coming to and from the storage facility. (Doc. 24, PageID 78, 86). The affidavit is far from bare bones and exceeds mere conclusory or meaningless statements. Just as in *United States v. Garnett* and *United States v. Gregory,* law enforcement officers in this case were informed by a reliable confidential source about the possibility of Payne's storage unit being used for narcotic trafficking that was additionally corroborated by the observation of Payne coming and

going from the storage units which were rented in his name. (Doc. 24, PageID 86).

In addition, an officer's "training and experience" may be considered in determining probable cause. *U.S. v. Schultz,* 14 F.3d 1093, 1097 (6th Cir. 1994); s*ee also Texas v. Brown,* 460 U.S. 730, 742 (1992) (an officer possessing probable cause because of previous participation in narcotic arrests and discussions that a balloon could contain an illicit substance). Here, Detective Siegel has experience as a narcotics investigator with the Norwood Police Department. (Doc. 24, PageID 77). Detective Siegel stated in his affidavit that based on his knowledge and experience that storage units are commonly used by individuals distributing illegal narcotics to avoid detection from law enforcement. *Id.* at PageID 86. Because a sufficient nexus can be inferred by the type of crime committed and likely hiding places, Detective Siegel can use his knowledge and experience to infer Payne's storage units as likely hiding places to conceal contraband. Therefore, the Court finds that there was a sufficient nexus between Payne and the two storage units at Fairfield Self-Storage. This Court concludes that based on the totality of the circumstances, the Butler County Common Pleas Judge who issued the search warrant had a substantial basis for finding the existence of probable cause.

Because the Court concludes that the search warrant for two storage lockers at Fairfield Self-Storage, Units #310 C and #768 L, were properly issued, it is unnecessary to address the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Accord United States v. Rutledge*, No. 19-4117, 2020 WL 4209280, at *3 (6th Cir. July 22, 2020) (citing *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006).

6

### III. **CONCLUSION**

Based on the foregoing, Defendant's Motion to Suppress Evidence (Doc. 24) is **DENIED**.

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                                Michael R. Barrett, Judge
                                                United States District Court